TANNER v. HUMPHREYS, State Engineer, et al.

No. 5627. Decided August 13, 1935. (48 P. [2d] 484.)

165

*Christenson, Straw & Christenson,* of Provo, for appellant.

*Joseph Chez,* Attorney General, and *Bagley, Judd & Ray,* of Salt Lake City, for respondents.

WOLFE, Justice.

This is an appeal from a judgment of nonsuit and dismissal rendered by the district court of Utah county in the case based upon the rejection of an application—No. A-1171 —requesting the permission to change the place and nature of use of a decreed water right on Provo river. The facts in detail are as follows: Mrs. Esthma Tanner, the plaintiff, on the 28th day of August, 1931, filed her application for a change in the point of diversion, place, and nature of the use of certain waters comprising a part of the Provo river system claimed to belong to her by reason of paragraph 28 of decree No. 2888 Civil. Said paragraph was headed, "From

January 1st to December 31st." It gave to John D. Dixon, claimed by Mrs. Tanner to be her predecessor in interest, 2.80 second feet of water, at the time of the decree being used on lands below the mouth of Provo Canyon, the point of diversion from the Provo river "being at or near the mouth of Provo Canyon." The amount was reduced to 2.52 second feet because of a change of place of diversion compared to that from which the 2.80 feet was formerly taken, the difference being to allow for seepage and evaporation. The point at which, by the application, it was proposed to divert the water was from two tributaries of the Provo river, namely, Lost creek and Bridal Veil Falls. The application also proposed to change the use from an irrigation to a domestic or municipal purpose to supplement the present water supply of Provo City.

The state engineer held that the decree No. 2888 Civil gave to Dixon an irrigation right for a part of the year and during the remainder of the year a right to take water only for culinary and domestic purposes incidental to the irrigation right. The plaintiff, Mrs. Tanner, claimed that the 2.52 second feet was water which by-passed the diversion dam of the Utah Power & Light Company, located four miles above Olmstead where is located the powerhouse. The Utah Power & Light Company, defendant herein, claimed that said water was not by-passed water, but that it was entitled to take it through its flume and use it for power purposes. The Utah Power & Light Company, by the above-named decree, was given for use through its flume for generation of power from waters of Lost creek, 6.41 second feet thereof and also waters from Bridal Veil Falls, 4.11 second feet thereof.

The plaintiff, by this change of point of diversion, sought to make an exchange of waters which she claimed by-passed the dam and to which she was entitled to the extent of 2.52 second feet for an equivalent amount of waters of Lost creek and Bridal Veil Falls. The mechanics involved would be to take the water from these two tributaries and divert it into the municipal line for Provo City, thus taking that water

from the power company and supplying the power company with an equivalent amount of water through its flume at its diversion dam; that is to say, instead of the water by-passing the dam, the water would go into the flume and the plaintiff would take for the benefit of Provo City an equivalent amount of water out of the two tributaries and divert it into the municipal line of Provo City. The power company protested that this would amount to enlarging the use and the right of the plaintiff. It is contended that if the plaintiff only had up to 2.52 second feet at her point of diversion at or near the mouth of the canyon for irrigation purposes, that such amount of water could only be used for beneficial purposes during the irrigation season for not exceeding 165 days, or thereabouts. That during the balance of the year the only waters which could be used would be for culinary or domestic purposes in connection with the place on which the irrigation water was used. By this exchange it was contended the plaintiff sought to obtain the 2.52 second feet all the year round.

The state engineer evidently adopted the version of the power company and rejected the application. The plaintiff appealed to the district court for the purpose of reversing the engineer's order. The complaint filed in the lower court sets out the application to the state engineer; the publication of notice of the filing of said application; the protest of the Utah Power & Light Company and the reply of the appellant; the action of the state engineer thereon; notice of appeal given to the power company; the water right claimed to be owned by the plaintiff under decree No. 2888 Civil; the point of diversion from which said water is now taken from the Provo river; the proposed change in the point of diversion; the proposed change in the nature of the use; the claimed right on the part of the plaintiff to such change; the fact that such change would not impair the value of any existing right nor interfere with the beneficial use of any other water right, nor be detrimental to the public welfare, nor conflict with the prior applications or existing rights;

that the defendant Utah Power & Light Company claimed a right or interest adverse to the right of the plaintiff to have the application allowed and approved, and that such claimed adverse interest is without merit.

Defendant Utah Power & Light Company answered and counterclaimed and the plaintiff replied. On the issues thus formed, the case went to trial. Plaintiff introduced evidence of the application and all the steps leading up to the decision of the state engineer; introduced evidence of her right under decree No. 2888 Civil with conveyances from Dixon to Caleb Tanner and Caleb Tanner to herself of said water right; introduced evidence that if the change were granted the use of the water would be through the Provo City municipal pipe line for municipal uses; that making this change would have no effect on the use of the water for power purposes; that under the proposed change the character of the water in the power flume would not be materially affected.

No evidence was introduced on (1) the matter of whether there was unappropriated water in the two tributaries sufficient to satisfy the claims of the plaintiff if an order were made to change the point of diversion; (2) of the ability of the plaintiff to substitute water for the water thus taken from the tributaries; and (3) the present existence of a right in the plaintiff or that she was entitled at the present time to 2.52 second feet or any part thereof.

The court, in granting the nonsuit, stated:

"By the provisions of paragraph 124 of the decree (2888 Civil) 'irrigation rights' are limited to the irrigation season with the incidental right only outside of the irrigation season of such quantity as must be necessary for supplying culinary and domestic uses to the people who use the water during the irrigation season for irrigation, and the commissioner is directed to see to it that in the non-irrigating season no more waters are allowed to pass under the right than are necessary for culinary and domestic uses as indicated. Such being the right granted, it would appear that the right to by-pass the dam of the Utah Power & Light Company would only exist during the irrigation season and out of the irrigation season for the amount necessary for domestic purposes as indicated; that the right which the plaintiff has here decreed to Dixon in paragraph 28 is not a

culinary or domestic or municipal right of use, nor is a power use; that the application filed with the State Engineer therefore was an effort to enlarge the extent of the right, enlarge the extent of the use beyond the right or power of the State Engineer to grant or allow, beyond the power of this court in this kind of a proceeding to direct the engineer to allow the application; that the evidence is insufficient to show the plaintiff entitled to the relief, and the motion for a nonsuit therefore is granted."

It therefore appears that the nonsuit was granted on the grounds that the change of diversion would enlarge the use and, second, that the evidence was insufficient to show plaintiff entitled to the relief, although the opinion did not specify in what particulars the evidence was insufficient. If the evidence is insufficient in any regard or the contention that the change of diversion would enlarge the use is well founded, the nonsuit was properly granted. In such case the plaintiff would have either failed to prove facts necessary to enforce the right, or even if so proved, the application could not be granted because it would amount to a new appropriation of additional water without going through the proceedings provided for by statute for appropriation in that the right would be enlarged and the plaintiff would, in effect, get more water by the exchange than she would have received had she continued to divert it under the irrigation right at the point at or near the mouth of the canyon.

Plaintiff appeals to this court, assigning as error the granting of the motion for a nonsuit and in entering its judgment of nonsuit and dismissal of the action. This brings up squarely the question as to whether there was sufficient evidence of necessary facts to enforce the right, and whether, at all events, under the circumstances of this case, the right was proved up to the point where the plaintiff rested her case. It hardly needs to be stated that in determining whether the motion for nonsuit was properly granted the plaintiff must be given the benefit of every intendment which may be drawn from the evidence. The plaintiff bases her claim of right to a change of the place, nature, and use upon section 100-3-3, R. S. Utah 1933:

"Any person entitled to the use of water may change the place of diversion or use, and may use the water for other purposes than those for which it was originally appropriated, but no such change shall be made, if it impairs any vested right, without just compensation. * * * "

Section 100-3-8 provides, as far as material here, as follows:

"Where there is no unappropriated water in the proposed source of supply, or where the proposed use will conflict with prior applications or existing rights, * * * it shall be the duty of the state engineer to reject such application."

If the point of diversion may be changed and the exchange made as applied for by the plaintiff without affecting any vested right of the power company, or if a decree can be made containing such conditions as will safeguard the rights of the power company and at the same time permit of the delivery of the water for municipal purposes, plaintiff is entitled to have her application granted. However, the burden rests upon the plaintiff to establish the necessary facts to make out a prima facie case. The respondent claims that plaintiff did not perform that duty in that evidence was lacking in the three respects above named in this opinion. We shall determine whether it was necessary to establish those facts in regard to which no evidence was introduced.

In respect to the question as to whether it was necessary to show that there were unappropriated waters in the two tributaries sufficient to satisfy the claims of plaintiff in case the application were granted, it appears that the plaintiff is not relying upon unappropriated waters in these two tributaries, but is relying upon an exchange which she proposes to give of her water at the dam for as much as she takes from the tributaries. At this juncture it perhaps should be stated that if respondent is correct in its assertion set up in its answer that all of the 2.52 second feet to which the plaintiff is, at the maximum, entitled is required to go through its flume, before being

diverted at or near the mouth of the canyon by the plaintiff, then the plaintiff would not be entitled to make the exchange because the water which she presently diverts goes through the flume of the power company any way. In that case she could not give an extra amount which by-passed the dam to compensate for the waters she would take out of the tributaries, because as far as the record shows she has no other water except the 2.52 second feet. However, that is a matter which would have to be tried out at the time the respondent's turn came to establish its asserted claims. The burden would be on the respondent to so prove.

For the purpose of the judgment of nonsuit we must assume the evidence correct to the effect that the plaintiff's water by-passes the respondent's diversion dam. It would appear, therefore, under the right sought by the plaintiff, no evidence was necessary that there were unappropriated waters in the two tributaries. Nor do we believe that it was necessary to introduce evidence that there was sufficient water in the two tributaries to make the exchange because the decree permitting the exchange could be so conditioned as not to permit any waters to be diverted into the Provo municipal pipe line from the two tributaries other than at any time by-passed the dam to the credit of the plaintiff. In other words, the plaintiff would be permitted to divert into the municipal pipe line from the tributaries only so much water as she was entitled to at any time and under any proration of the water of Provo river to have by-passed on her account at the diversion dam of respondent.

As to the claim that plaintiff must show that she would be always capable of discharging water at the diversion dam into the flume equivalent to the water which she took from the tributaries, we think it unnecessary to make such showing. We must assume that the rights which the decree No. 2888 Civil gave to Dixon still belong to plaintiff. In an application for a change of diversion, it is not necessary for a party so applying each time to make a

showing that it has beneficially used its water right. If it has not, then the protestants may so show. It is assumed that where the water has been used upon the land for which it is diverted, that such amount was beneficially used. Any decree permitting the change of diversion could provide that no more water be taken from the tributaries than at any particular time the plaintiff was entitled to under her right, taking into consideration the matter of proration among all the water users of that class.

In fact, the trial court seemed to have that very fact in mind, stating it very aptly when respondent made its first motion for nonsuit:

"If the Court should make an order which in effect would authorize the diversion and the exchange, of necessity it would be conditioned that the diversion could only take place as long as water was supplied to the power company to take the place of what was diverted and only to the extent that the water was supplied."

What we have said regarding the ability of the plaintiff to supply the substituted waters also covers the claim made by the respondent that she is presently entitled to the 2.52 second feet of water. It remains to consider whether if the application is granted it would enlarge the right of the plaintiff. We believe that the court and the respondent are both correct in their interpretation of the decree that by paragraph 124 of the said decree the plaintiff was only entitled to water up to 2.52 second feet for irrigation purposes and in the nonirrigation season only so much thereof as was reasonably required for domestic and culinary purposes on the premises where the irrigation water was used. But this matter could also have been taken care of in the decree. It might have been necessary for the court to take evidence on the question of what amount of water would be reasonably required during the nonirrigable season for culinary and domestic purposes, and so condition the decree as to permit only that amount to be taken from the tributaries during such nonirrigation season. We think that all that the plaintiff asked and all that she could get

was an exchange of the waters which she had under her right, but that as far as the complaint and evidence were concerned up to the point of the motion for a nonsuit, she was entitled to a decree giving her that right, the court to supplement with a hearing on the amount reasonably necessary for domestic purposes. Thus interpreted, it disposes of the contention that the plaintiff was in effect seeking to appropriate additional water.

Respondent makes the point that the plaintiff is charged with the duty of showing that the change in the point of diversion would not affect the vested rights of others, citing *New Cache La Poudre Irr. Co.* v. *Water Supply & S. Co.*, 49 Colo. 1, 111 P. 610, 611, and *Monte Vista Canal Co.* v. *Centennial Irr. Ditch Co.*, 24 Colo. App. 496, 135 P. 981. The former case states:

> "One who seeks to have made a change in the point of diversion of his ditch should make it appear to the court that the same will not injuriously affect the vested rights of others, although in a sense this may involve proof of a negative. * * * If the change is made, it disturbs the existing order and manner of distributing water diverted from our natural streams into irrigating ditches, which is performed by public officers, and causes a modification to be made in the general adjudication decree. It is fitting that a party who asks such relief should bear the burden of proving that the vested rights of others will not thereby be infringed if it is granted. It is only the burden which is usually imposed upon the moving party in a lawsuit."

It may be that the plaintiff should put in general proof that the change will not injure or disturb vested rights, but if so, it is rather in homage to the general rule that he is required to offer proof in support of all his allegations, because as a practical matter those who protest will most likely be better situated to know wherein they will be injured than will the plaintiff. In this case it is difficult to see where any other person could be injured unless the diversion of the waters from the tributaries into the municipal pipe line where it would be taken on to Provo would contravene paragraph 116 of the decree, which reads as follows:

"It is further ordered, adjudged and decreed, that for the purpose of maintaining the volume of flow of Provo River available for use of the parties, and to maintain to the parties hereto the respective rights herein awarded and decreed, none of the parties shall change the place of use of said water so as to cause the seepage or drainage therefrom to be diverted away from the channel of said river, or canals, or from the lands heretofore irrigated thereby."

Placing the water from the tributaries into the municipal pipe line would take it entirely away from the flow of the river, and, hence, would prevent the return of any of such water through seepage back to the channel of said river. However, this could not affect the power company, for those waters could never get back to the river in time to enter their flume. It might affect some of the irrigators entitled to the waters, but none of them have protested. We think that under the circumstances the testimony of Caleb Tanner to the effect that the diversion would not affect the character of the water in the flume and that it would not impair any of the rights of the power company was sufficient proof as against a motion for a nonsuit to support the allegations of plaintiff's complaint. It would be impracticable to require the plaintiff to ferret out all of the ways in which the others might perchance be injured and offer proof in negation thereof as a part of its affirmative case. The general negative as against injury to the protestants is sufficient to carry the case over a motion for a nonsuit in that respect.

From the above, it must be concluded that the court erred in granting the motion for a nonsuit. The judgment of nonsuit and dismissal is reversed, with instructions to reinstate the complaint and to proceed with the trial. If, upon the evidence as finally introduced it appears that a vested right of the power company will be impaired, the court will deny the application or require compensation. These things cannot be determined, however, until all the evidence is in. Costs to the appellant.

ELIAS HANSEN, C. J., and FOLLAND, MOFFAT, and EPHRAIM HANSON, JJ., concur.