270 P.2d 453

**SALT LAKE CITY**

**v.**

**BOUNDARY SPRINGS WATER USERS ASS'N et al.**

**No. 8058.**

Supreme Court of Utah.

May 8, 1954.

State Engineer's approval of what is therein designated an "Application for the Right of Exchange of Water" by defendant Boundary Springs Water Users Association, respondent here. This application proposes to change the place of diversion of 1.5675 cubic feet per second of the waters of Mill Creek, a stream flowing out of Mill Creek Canyon in the mountains east of Salt Lake City, from the various diversion places of several ditches below the mouth of the Canyon to the upper and lower Boundary Springs about two thousand feet up stream and above the Canyon mouth. These springs are tributaries of Mill Creek. They arise in the canyon within about 20 feet from the side of the Creek and in their natural state they immediately flowed into and were mingled with the other waters of that stream above the places where defendants' water was formerly diverted. The purpose of the exchange or change is to obtain pure water from the Springs and pipe it out of the canyon for domestic and culinary use before it is mixed with the other waters of the Creek which are contaminated to such extent that they are unfit for human consumption without more than mere chlorination.

E. R. Christensen, City Atty., Salt Lake City, for appellant.

J. D. Skeen, E. W. Clyde, Salt Lake City, E. R. Callister, Atty. Gen., Robert B. Porter, Asst. Atty. Gen., for respondents.

WADE, Justice.

Appeal by plaintiff Salt Lake City from a judgment of the District Court affirming the

The city contends that in substance this is an application for a change of place of diversion and not an application for an exchange of water. In other words that

it has the wrong label and therefore neither the State Engineer nor the court got jurisdiction to determine this controversy. This application proposes to change the place of diversion as well as a partial exchange of water but although the application is labeled as one for an exchange of water, both it and the notice published of its filing clearly state exactly what the applicant proposes to do thereunder. Furthermore, it was not calculated to, nor reasonable to anticipate that it would mislead anyone and there is no evidence that anyone was misled. Certainly the City was not misled for they duly filed their protest with the Engineer and prosecuted this appeal to the District Court and to this Court. So it cannot now claim that it was misled. Although the application's label does not fully describe its contents its intended purposes were fully and clearly stated in both the application and the notice thereof and no one was or could reasonably be misled thereby. Under these facts there was no lack of jurisdiction.

In 1913, by what is called the Morse decree, the water rights in Mill Creek were adjudicated. In that decree the highest priority rights were called "house use streams." Such streams amounted to 2.387 second feet continuous year-round flow and such phrase indicated at least a partial culinary use. All of the waters covered by this application were "house use streams" but not all of the "house use streams" were included in the application. From 1923 to 1928, Salt Lake City, by exchange agreements with the owners, whereby the city agreed to furnish irrigation water from Utah Lake and culinary water from its waterworks system, acquired the water rights of five ditch companies in Mill Creek, but the city does not own any of the "house use streams." There is some intimation in the decree that some of the waters designated as "house use streams" were sometimes not used for culinary purposes, there is nothing in the decree or the evidence in this case to indicate that either at the time of the decree or when the city acquired its rights the so-designated waters were freer from contamination than any other water from this Creek, in fact it is clear that all of such water came out of the canyon in one stream. The city acquired these water rights for culinary use and so used them until in 1939, when from the use of the Canyon for recreational purposes the waters of this stream became so contaminated that mere chlorination would not render them fit for human consumption. Since then it has not used them in its waterworks system. However, it plans a filtration plant which will make this water available for culinary use.

If the evidence shows that there is reason to believe that the proposed change can be made without impairing vested rights the application should be ap-

proved.[1] The owner of a water right has a vested right to the quality as well as the quantity which he has beneficially used.[2] A change application cannot be rejected without a showing that vested rights will thereby be substantially impaired. While the applicant has the general burden of showing that no impairment of vested rights will result from the change, the person opposing such application must fail if the evidence does not disclose that his rights will be impaired.[3]

The evidence would sustain a finding that this change will slightly increase the degree of contamination of the water from Mill Creek available for city use. It also shows that without more than mere chlorination of such water, with or without the change, it is not fit for human consumption. Without additional means of keeping the water free from contamination or of purifying it the city can only use such water for irrigation and the difference in the degree of contamination affected by the change will not decrease its value for that purpose. There is also no showing that this change will cause added expense or trouble to keep this water free from contamination, or to purify it therefrom.

In view of such showing the proposed change will not impair vested rights and should be allowed. Judgment affirmed with costs to the respondent.

McDONOUGH, C. J., and CROCKETT and HENRIOD, JJ., concur.

WORTHEN, J., does not participate herein.

1. See United States v. District Court, etc., Utah, 238 P.2d 1132, same case 242 P.2d 774; In re Application 7600 to Appropriate 30 Second Feet of Water, 63 Utah 311, 225 P. 605; Eardley v. Terry, 94 Utah 367, 77 P.2d 362; Tanner v. Bacon, 103 Utah 494, 136 P.2d 957; Whitmore v. Murray City, 107 Utah 445, 154 P.2d 748; Little Cottonwood Water Co. v. Kimball, 76 Utah 243, 289 P. 116; Lehi Irrigation Co. v. Jones, 115 Utah 136, 202 P.2d 892.

2. Shurtleff v. Salt Lake City, 96 Utah 21, 82 P.2d 561; Sigurd City v. State, 105 Utah 278, 142 P.2d 154; Moyle v. Salt Lake City, 111 Utah 201, 176 P.2d 882.

3. Kinney on Irrigation and Water Rights Vol. 2, page 1538, Hutchins The Law of Water Rights, p. 378 and Tanner v. Humphreys, 87 Utah 164, 48 P.2d 484.