**STATE of Utah, Plaintiff and Appellee,**

v.

**Michael MUNSON, Defendant and Appellant.**

No. 970206.

Supreme Court of Utah.

Sept. 11, 1998.

Jan Graham, Attorney General, Kenneth A. Bronston, Assistant Attorney General, Salt Lake City, Gary R. Heward, Brenda J. Beaton, Ogden, for plaintiff.

Jonathan B. Pace, Ogden, for defendant.

ZIMMERMAN, Justice:

Michael Munson appeals from the conviction entered and sentence imposed after he pleaded guilty to three crimes: one count of aggravated murder, a capital felony, in violation of section 76–5–202 of the Utah Code; one count of attempted aggravated murder, a first degree felony, also in violation of section 76–5–202; and one count of aggravated burglary, a first degree felony, in violation of section 76–6–203 of the Code. Munson appeals his conviction and sentence on the following grounds: (i) Judge Heffernan was biased and should have been recused from presiding over the case; (ii) section 76–3–207's sentencing scheme is unconstitutionally overbroad and vague; and (iii) Munson received ineffective assistance of counsel when his court-appointed attorney advised him to withdraw his motion to withdraw his guilty plea because that plea was not knowing and voluntary. We affirm.

We first set forth the facts and procedural history of this case before proceeding to the standard of review and our analysis. In the early morning hours of July 25, 1996, Munson, along with Robert and Alitha Austin, entered the home of Munson's grandparents, Edward and Wanda Anderson, intending to steal jewels, food, and money, and to kill the elderly couple. Robert carried a knife, and all three wore gloves. Wanda was in the kitchen when the trio entered the house. Munson grabbed his grandmother by the hair and arms while Robert held a knife to her throat. Although the exact sequence of events is somewhat unclear, at some point Wanda screamed and Edward entered the kitchen holding a handgun. Upon seeing his wife with a knife to her throat he fired the gun, hitting Robert in the hand. Robert went after Edward with the knife and was shot once more in the shoulder. Robert then proceeded to kill Edward, stabbing him more

than twenty times. At some time during these events the three fled the house.[1]

Munson and the Austins retreated to a cemetery to treat Robert's wounds. Munson disposed of the Austins' gloves in a storm sewer drain and wiped the bloody knife clean. The three then concocted a story that Robert had been wounded in a drive-by shooting. The Austins stuck to their story when confronted by their aunt and uncle with whom they lived, but late that evening Alitha indicated there might have been a murder, and Robert then acknowledged the stabbing. The aunt and uncle then called the police. When police arrived at the Anderson residence they found Edward dead, awash in blood, and Wanda alive, but motionless, on the floor, having sustained a cut to her neck. Munson was later apprehended in his hotel room.

Evidence showed that the burglary and murder had been Munson's idea and had been in the making for some time. A week before the murder, Munson unsuccessfully solicited four different people to assist him in his plan to rob and kill the Andersons. Finally, he succeeded in recruiting Robert, age sixteen, to help with the robbery and murder, and Alitha, age fourteen, to drive the getaway car, which they planned to steal from the Andersons.

Munson had preyed on the Andersons for some time. In the year preceding the incident, Munson frequently accompanied Wanda to the bank. Her mental faculties were declining, and Munson would assist her in cashing checks for amounts between $200 and $900. When there were insufficient funds to cover the amount of a check, Munson would write in an amount on the check that the account could cover, leaving Wanda only to sign her name. In this manner Munson obtained between $8,000 and $12,000. In March of 1996, Edward obtained a power of attorney over Wanda's affairs and prevented her from giving money to Munson. This made Munson angry, and over a period of months he repeatedly told others that he was going to slit his grandparents' throats.

After Munson's arrest, the case was assigned to Judge Pamela G. Heffernan, who had previously presided over another case in which Munson had been charged with criminal mischief resulting from the vandalizing of headstones in the Ogden cemetery. Because Judge Heffernan knew him as a result of the prior case, Munson filed an affidavit of prejudice, asking that she be recused. Judge Heffernan certified the challenge to Judge Michael D. Lyon, the presiding judge, who in turn certified the matter to Judge Roger S. Dutson. After reviewing both the presentence report in that criminal mischief case, and an audiotape of Munson's sentencing before Judge Heffernan, Judge Dutson concluded there was no evidence to support Munson's allegation of actual prejudice or the appearance of prejudice, and therefore, no basis to recuse Judge Heffernan from the case.

On March 21, 1997, Munson pleaded guilty to each offense as charged based on the sole agreement that the prosecutor would not recommend the imposition of the death penalty. On April 16, 1997, Munson filed a motion to withdraw his guilty plea, but the next day, after consulting with his attorney, filed a motion to strike the motion to withdraw his guilty plea. He proceeded to sentencing, and on April 30, 1997, following a sentencing hearing, Judge Heffernan sentenced Munson to a term of life imprisonment without parole on the aggravated murder charge, to be served consecutively with two concurrent five to life terms on the aggravated attempted murder and aggravated burglary charges. The court also imposed a one year prison term for the weapons enhancement to run consecutive to all the other terms.

Turning to our analysis, Munson first claims that Judge Dutson erred in not recusing Judge Heffernan. While Munson claims that this issue was expressly preserved for appeal, the State argues that this claim was waived because Munson's guilty plea was not expressly conditioned upon his right to appeal the ruling regarding Judge Heffernan.

■ In *State v. Parsons*, this court stated "[t]he general rule applicable in criminal pro-

---

1. Although the testimony was somewhat unclear, Munson and Alitha apparently fled the house when Edward began shooting with Robert following after he killed Edward.

ceedings ... is that by pleading guilty, the defendant is deemed to have admitted all of the essential elements of the crime charged and thereby waives all nonjurisdictional defects." 781 P.2d 1275, 1277 (Utah 1989). Thus, a knowing and voluntary guilty plea precludes reservation of issues for appeal, even those concerning alleged pre-plea constitutional violations. *See id.; State v. Yeck,* 566 P.2d 1248, 1249 (Utah 1977).

■ However, a defendant may enter a conditional guilty plea and expressly reserve pre-plea issues for appeal. Rule 11 of the Utah Rules of Criminal Procedure provides:

With approval of the court and the consent of the prosecution, a defendant may enter a conditional plea of guilty, guilty and mentally ill, or no contest, reserving in the record the right, on appeal from the judgment, to a review of the adverse determination of any specified pre-trial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

Utah R.Crim. P. 11(i); *see also State v. Sery,* 758 P.2d 935, 937–38 (Utah Ct.App.1988). Munson, however, did not enter a conditional plea. The sole agreement regarding Munson's plea was that in exchange for it the State would not seek the death penalty. Because Munson failed to condition his plea on the reservation of his claim that Judge Dutson erred in not recusing Judge Heffernan, that claim was waived. Therefore, we do not consider it.

Munson's second argument is that the sentencing statute, section 76–3–207(2)(a)(iv), is unconstitutionally overbroad and vague. It provides: "In capital sentencing proceedings, evidence may be presented on ... (iv) any other facts in aggravation or mitigation of the penalty that the court considers relevant to the sentence." Utah Code Ann. § 76–3–207(2)(a)(iv) (Supp.1997). Munson argues that the statute is overbroad because it permits the trial court to consider a defendant's religious beliefs at sentencing. *See Elks Lodges 719 & 2021 v. Department of Alcoholic Beverage Control,* 905 P.2d 1189, 1203 (Utah 1995) (stating "a statute is overbroad if it attempts to sanction constitutionally protected activities"), *cert. denied,* 517 U.S. 1221, 116 S.Ct. 1850, 134 L.Ed.2d 950 (1996).

Munson further argues that the statute is vague because it gives the sentencing court and/or jury unlimited discretion. Munson raised the same arguments at his sentencing hearing, where the trial court found that the constitutional challenge was moot because it had been stricken from the record. We agree.

The alleged reference to Munson's religious beliefs took place at the sentencing hearing during the testimony of one of the detectives who had interviewed Munson after his arrest. In recounting the interview, the detective testified that Munson indicated he had "a problem with God and the devil." At that point Munson's counsel objected to the statement as irrelevant but the judge overruled that objection. The detective then testified that Munson told him whereas for most people "God [is] in one place and the devil [is] in kind of a bad place," for him "the devil is God and God is the devil." After the trial court heard argument on Munson's constitutional challenge, it stated that it had no intention of using the testimony regarding the devil in sentencing, and struck the challenged testimony. It then ruled that because it had stricken the testimony, the constitutional challenge was moot.

■ It is well settled in this state that "before a party may attack the constitutionality of a statute he must be adversely affected by that very statute." *Sims v. Smith,* 571 P.2d 586, 587 (Utah 1977); *see also Cavaness v. Cox,* 598 P.2d 349, 352 (Utah 1979) (stating "a person may challenge the constitutionality of a statute only when and as far as it is being, or is about to be applied to his disadvantage"); *State v. Hoffman,* 733 P.2d 502, 505 (Utah 1987) (stating "plaintiff may challenge [statute's] validity only to the extent the alleged basis of its infirmity is, or will be, applied to his detriment"). Because the trial court, in fact, did not consider Munson's religious beliefs at sentencing, the statute was not applied to Munson's disadvantage. Therefore, he has no standing to challenge the constitutionality of the sentencing statute, and his challenge is moot.

Finally, Munson claims that he received ineffective assistance of counsel when his at-

torney advised him to file a motion to strike his motion to withdraw his guilty plea. More specifically, Munson alleges that his counsel, Tony Miles, advised him to withdraw his motion without first requesting a transcript of the plea-taking. Munson argues that absent the deficient representation, there is a reasonable likelihood that he would have prevailed on his motion to withdraw his guilty plea.

■ Because the record is sufficient for us to determine for the first time on direct appeal whether Munson received effective assistance of counsel, we decide the issue as a matter of law. *See State v. Hovater,* 914 P.2d 37, 39 (Utah 1996) (citing *State v. Humphries,* 818 P.2d 1027, 1029 (Utah 1991)); *State v. Tennyson,* 850 P.2d 461, 466 (Utah Ct.App.1993). In order to show ineffective assistance of counsel, " 'a defendant must show, first, that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment and, second, that counsel's performance prejudiced the defendant.' " *Parsons v. Barnes,* 871 P.2d 516, 521 (Utah 1994) (quoting *Bundy v. Deland,* 763 P.2d 803, 805 (Utah 1988)). To establish the prejudice prong, the defendant must show "a reasonable probability exists that except for ineffective counsel, the result would have been different." *State v. Lovell,* 758 P.2d 909, 913 (Utah 1988). Because Munson cannot show he was prejudiced by his counsel's performance, we reject his ineffective assistance claim.

■ In order to show prejudice, Munson must show there is a reasonable probability the court would have granted his motion to withdraw his guilty plea. Generally, a motion to withdraw a guilty plea will be granted only for good cause, i.e., when the defendant can show that the plea was not entered knowingly and voluntarily. In this case, the transcript of the plea taking clearly shows that the trial court assiduously complied with the requirements of rule 11 of the Utah Rules of Criminal Procedure, and that Munson's plea was in fact both knowing and voluntary. We find little merit in Munson's argument that despite the trial court's compliance with rule 11, Munson was obviously confused as to what was taking place with the entry of his plea, and therefore, his plea was not knowing and voluntary. While it is true that Munson exhibited moments of confusion during the plea-taking, the trial court was extremely solicitous in addressing each instance of confusion and in making sure Munson understood precisely what he was doing and the rights he was waiving by pleading guilty. The following exchange is set forth as an example of Munson's confusion:

> The Court: Do you intend to enter a guilty plea because you are guilty of the charges that have been filed against you?
>
> Mr. Gravis [Munson's counsel]: Are you pleading guilty because you are in fact guilty of the charges?
>
> Mr. Munson: I don't know what I'm pleading guilty—
>
> Mr. Gravis: Well—
>
> Mr Munson: Attempted murder?
>
> Mr. Gravis: Yeah.
>
> Mr. Munson: And the—the burglary and that, burglary I would just like to plead guilty to, but I just can't see pleading guilty to a murder.

After another brief exchange the court then stated: "[N]ow if you've got a question obviously and it's important, and I think you need to talk to your lawyer about it, if you want to discuss it with him, and I'm going to let you take as much time as you need to talk about it."

The court then recessed so that Munson could discuss his concerns with his lawyer. After the recess and upon continuing with the plea-taking, the court asked Munson no less than seven times in various formulations whether he had any questions, whether he understood what he was doing, whether he understood what he was giving up in pleading guilty, and whether he was pleading guilty because he was in fact guilty. Each time Munson responded that he had no questions, that he was guilty, and that he knew what he was doing in entering his plea. The court then proceeded to take Munson's plea on each of the three counts.

Munson points to two other instances of confusion during the plea-taking process in support of his argument that his plea was not knowing and voluntary. However, on each of these occasions the trial court was equally solicitous in getting at the root of that confusion and eliminating it. Therefore, we find as a matter of law that Munson entered his plea knowingly and voluntarily. *See State v. Holland,* 921 P.2d 430, 433 (Utah 1996) (stating "the ultimate question of whether the trial court strictly complied with constitutional and procedural requirements for entry of a guilty plea is a question of law that is reviewed for correctness"). Because Munson's plea was entered knowingly and voluntarily, it is highly unlikely that the court would have granted Munson's motion to withdraw his guilty plea. Therefore, Munson cannot show he suffered prejudice as a result of his attorney's advice to withdraw his motion to withdraw his guilty plea, and he was not denied effective assistance of counsel as a matter of law.

Affirmed.

Chief Justice HOWE, Associate Chief Justice DURHAM and Justice RUSSON, concur in Justice ZIMMERMAN's opinion.

Justice STEWART, does not participate herein.