2012 UT 29

**STATE of Utah, Plaintiff and Petitioner,**

v.

**Wolfgango RUIZ, Defendant and Respondent.**

No. 20090559.

Supreme Court of Utah.

May 4, 2012.

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Asst. Att'y Gen., Salt Lake City, for petitioner.

Hakeem Ishola, Aaron Tarin, Salt Lake City, for respondent.

Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 In 2006, Wolfgango Ruiz pled guilty to one count of attempted sexual abuse of a child, a third degree felony. Prior to his sentencing, Mr. Ruiz made a request to withdraw his plea on the ground that his original defense counsel had not informed him of the immigration consequences of a felony conviction. Initially, Judge Fuchs of the Third District Court granted Mr. Ruiz's motion. But upon a motion to reconsider submitted by the State, Judge Skanchy, who had taken over Mr. Ruiz's case, reversed the order that permitted Mr. Ruiz to withdraw his plea.

¶ 2 The court of appeals subsequently reversed Judge Skanchy's ruling and reinstated Judge Fuchs's order granting Mr. Ruiz's motion to withdraw. The court of appeals reached this decision based on Judge

Skanchy's failure to state the basis for his ruling on the record and the principle previously articulated by this court that motions to withdraw guilty pleas should be liberally granted.

¶ 3 We granted certiorari to resolve two issues: (1) whether the court of appeals erred in vacating Judge Skanchy's grant of the State's motion to reconsider and (2) whether our precedent stating that presentence motions to withdraw guilty pleas should be "liberally granted" remains good law in light of recent changes to section 77–13–6 of the Utah Code (Plea Withdrawal Statute or Statute).

¶ 4 We first hold that the court of appeals erred in vacating Judge Skanchy's ruling because the basis for the ruling is apparent on the record. Second, we hold that recent amendments to the Plea Withdrawal Statute have superseded our prior case law stating that presentence motions to withdraw guilty pleas should be "liberally granted." Based on these conclusions, we reverse the court of appeals' decision to vacate Judge Skanchy's ruling and remand this case for further proceedings consistent with this opinion.

## BACKGROUND

¶ 5 In 2006, Mr. Ruiz was charged with sexual abuse of a child, a second degree felony. After his arrest, he retained a private attorney to represent him. In February 2006, pursuant to a plea agreement, Mr. Ruiz pled guilty to the lesser charge of attempted sexual abuse of a child, a third degree felony. After entering his guilty plea, Mr. Ruiz fired his first attorney and retained a second attorney.

¶ 6 Shortly after retaining his second attorney, Mr. Ruiz filed a timely motion to withdraw his plea. In support of this motion, Mr. Ruiz alleged that his first attorney had "deliberately misled [him] into believing that the original second degree felony charge ... carried a minimum mandatory prison term of five years" and had affirmatively misadvised him on the immigration consequences of his plea. In an affidavit attached to his motion, Mr. Ruiz stated that, after entering his plea, he had learned from an immigration attorney

that he would "definitely" be deported if he were convicted. Mr. Ruiz also stated in his affidavit that had his first attorney correctly advised him of the potential immigration consequences of his plea, he would not have pled guilty.

¶ 7 In August 2006, Judge Fuchs of the Third District Court presided over a hearing on Mr. Ruiz's motion. Although the State opposed the motion, it presented no evidence at the hearing to rebut the allegations contained in Mr. Ruiz's affidavit. After hearing argument on the motion and considering Mr. Ruiz's affidavit, Judge Fuchs concluded that Mr. Ruiz's first attorney had affirmatively misrepresented the consequences of a guilty plea on Mr. Ruiz's immigration status. Specifically, Judge Fuchs stated that "[s]ince I have nothing on the record from [the first attorney] ..., such as an affidavit as to what he represented ..., I can only take the affidavit and the allegations as [Mr. Ruiz] gives them to me, which is that [his first attorney] told him that this was a non-deportable offense." Based on this conclusion, Judge Fuchs permitted Mr. Ruiz to withdraw his plea. After Judge Fuchs announced this decision, the State asked whether he would consider revising his ruling if the State "were to bring in" the first attorney to determine exactly what occurred during the course of his representation of Mr. Ruiz. Judge Fuchs declined this request, noting that the State had been given the opportunity to present this evidence during the hearing.

¶ 8 Nine days after Judge Fuchs entered his order permitting Mr. Ruiz to withdraw his guilty plea, the State filed a motion to reconsider. In its motion, the State informed Judge Fuchs that prosecutors had spoken to the first attorney and that he had denied misrepresenting the immigration consequences of Mr. Ruiz's plea. In support of its motion, the State attached an affidavit from the first attorney stating that he had "repeatedly" addressed the immigration consequences of Mr. Ruiz's plea with Mr. Ruiz and that he had expressly informed Mr. Ruiz "that he faced deportation as a consequence of any felony conviction." Although Judge Fuchs had initially stated during the hearing on Mr. Ruiz's motion that he would not con-

sider the first attorney's testimony, he scheduled a hearing on the State's motion to reconsider. But before this hearing was held, Judge Fuchs retired.

¶ 9 In January 2007, Judge Fuchs's successor, Judge Skanchy, presided over the hearing on the State's motion to reconsider. At the beginning of the hearing, Mr. Ruiz's second attorney asked the court to prohibit the State from presenting the first attorney's testimony. But after hearing argument from the State, Judge Skanchy allowed the State to present the testimony and explained that he felt it was appropriate for the court to consider the testimony to determine whether Mr. Ruiz's motion to withdraw had been granted in error.

¶ 10 During the hearing, the first attorney testified that he and Mr. Ruiz had addressed the immigration consequences of the charges "from day one" of his representation and that he had continued to talk about those consequences with Mr. Ruiz almost every time they met. Additionally, he testified that he had specifically informed Mr. Ruiz that he would "almost certainly be deported" if he pled guilty to, or was convicted of, the charge against him.

¶ 11 After hearing this testimony, Judge Skanchy concluded that the first attorney had rebutted "the self-serving allegations set forth in [Mr. Ruiz's] affidavit." Based on this finding, Judge Skanchy granted the State's motion to reconsider, vacated Judge Fuchs's order granting Mr. Ruiz's motion to withdraw his guilty plea, and denied Mr. Ruiz's original motion to withdraw.

¶ 12 Mr. Ruiz timely appealed Judge Skanchy's ruling to the Utah Court of Appeals.[1] Before the court of appeals, Mr. Ruiz argued that the law of the case doctrine prohibited Judge Skanchy from reconsidering Judge Fuchs's prior ruling that the State could not present the first attorney's testimony to rebut Mr. Ruiz's affidavit.[2] In rejecting this argument, the court of appeals explained that the law of the case "doctrine does not prevent a different judge from revisiting an interim order issued in a case by a prior judge, because ... the two judges, while different persons, constitute a single judicial office for law of the case purposes." [3]

¶ 13 After concluding that Judge Skanchy had authority to revisit Judge Fuchs's ruling, the court of appeals noted that Judge Skanchy had not articulated the basis for his decision to allow the State to present the first attorney's testimony.[4] Then, after referencing opinions from this court stating that presentence motions to withdraw guilty pleas should, in general, be liberally granted, the court explained that "[a]bsent ... explanation on the record, [it] ha[d] no assurance that the change was not merely a function of personal preference on Judge Skanchy's part." [5] Based on this concern, the court of appeals vacated Judge Skanchy's ruling and reinstated Judge Fuchs's original order permitting Mr. Ruiz to withdraw his plea.[6]

¶ 14 After the court of appeals issued its opinion, the State filed a petition for rehearing in which it requested that the court of appeals remove the language from its opinion stating that presentence motions to withdraw guilty pleas should be "liberally granted." [7] The court of appeals denied this motion and explained in an amended opinion that, despite recent statutory amendments, the "liberally granted" principle remained good law.[8]

¶ 15 After the court of appeals issued its amended opinion, the State filed a petition for certiorari, which we granted. On appeal to this court, the State contends that the

---

1. *See State v. Ruiz*, 2009 UT App 121, 210 P.3d 955.

2. *Id.* ¶¶ 9–10. Before the court of appeals, Mr. Ruiz also argued that his first attorney's failure to accurately explain the immigration consequences of his plea rendered his plea unknowing and involuntary, but the court did not address the merits of this claim. *Id.* ¶¶ 3, 17, 21.

3. *Id.* ¶ 10 (alteration omitted) (citation omitted) (internal quotation marks omitted).

4. *Id.* ¶ 14.

5. *Id.*

6. *Id.* ¶ 15.

7. *Id.* ¶ 16.

8. *Id.* ¶¶ 16–23.

court of appeals erred in two respects. First, the State argues that the court of appeals erred in reversing Judge Skanchy's ruling either because the basis for his decision is apparent on the record or because his failure to articulate the basis for his decision warranted only remand, but not reversal. Second, the State contends that statutory amendments to the Plea Withdrawal Statute have superseded the principle that presentence motions to withdraw guilty pleas should be liberally granted. Accordingly, the State argues that it was erroneous for the court of appeals to articulate this principle in its opinion.

¶ 16 In contrast, Mr. Ruiz first argues that the issues presented on certiorari have been rendered moot by the United States Supreme Court's recent opinion in *Padilla v. Kentucky*.[9] Mr. Ruiz also argues that the court of appeals properly reversed Judge Skanchy's ruling and correctly stated that presentence motions to withdraw guilty pleas should be liberally granted.[10] We have jurisdiction to hear this appeal under section 78A–3–102(3)(a) of the Utah Code.

### STANDARD OF REVIEW

██ ¶ 17 "On certiorari, we review the decision of the court of appeals .... 'for correctness, giving no deference to its conclusions of law." [11]

### ANALYSIS

### I. THE ISSUES PRESENTED ON CERTIORARI ARE NOT MOOT

██ ¶ 18 Before addressing the issues presented on certiorari, we first address Mr.

Ruiz's argument that these issues have been rendered moot. After submission of the State's opening brief, the United States Supreme Court issued an opinion in the case of *Padilla v. Kentucky*.[12] Mr. Ruiz contends that *Padilla* has mooted the issues accepted by this court on certiorari. We disagree.

¶ 19 We have previously explained that "[a]n appeal is moot if during the pendency of the appeal circumstances change so that the controversy is eliminated, thereby rendering the relief requested impossible or of no legal effect." [13] In some instances, a relevant opinion issued during the pendency of an appeal can constitute a change in circumstances. But such an opinion only renders an issue moot if it eliminates the controversy on appeal and renders the relief requested by the petitioners impossible or of no legal effect.[14]

¶ 20 In *Padilla*, the United States Supreme Court held that the Sixth Amendment to the United States Constitution requires that defense attorneys inform their clients of the potential immigration consequences—including the possibility of deportation—of entering a guilty plea, whenever those consequences are "truly clear" under immigration law.[15] Thus, the holding in *Padilla* relates only to the duties and obligations of a criminal defense attorney to inform a client of the immigration consequences of a guilty plea.

¶ 21 Neither of the issues before us, however, require us to review whether the first attorney satisfied the constitutional requirements announced in *Padilla*. Instead, on

---

9. — U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

10. Although Mr. Ruiz contended at oral argument that his first attorney's failure to accurately explain the immigration consequences of his plea rendered his plea unknowing and involuntary, this issue was not presented in Mr. Ruiz's briefing to this court and is not within the scope of the questions presented on certiorari. We therefore decline to address this issue. *See, e.g., State v. Loveless*, 2010 UT 24, ¶ 1 n. 1, 232 P.3d 510 (declining to address an issue because it was "beyond the scope of the question on which we granted certiorari"); *State v. Timmerman*, 2009 UT 58, ¶ 25 n. 5, 218 P.3d 590 (declining to address an issue that was inadequately briefed).

11. *State v. Harker*, 2010 UT 56, ¶ 8, 240 P.3d 780 (internal quotation marks omitted).

12. — U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010).

13. *Frito–Lay v. Utah Labor Comm'n*, 2009 UT 71, ¶ 33, 222 P.3d 55 (internal quotations marks omitted).

14. *See id.*

15. 130 S.Ct. at 1483.

certiorari we have been asked only to determine (1) whether the court of appeals' decision to vacate Judge Skanchy's ruling was erroneous and (2) whether the principle that presentence motions to withdraw guilty pleas should be liberally granted remains good law after recent changes to the Plea Withdrawal Statute. Accordingly, because the issues before us are entirely separate and distinct from the issue addressed in *Padilla*, we conclude that *Padilla* has not eliminated the controversy before us. We therefore hold that the issues presented on certiorari are not moot.

## II. THE COURT OF APPEALS ERRED WHEN IT VACATED JUDGE SKANCHY'S GRANT OF THE STATE'S MOTION TO RECONSIDER

¶ 22 Having determined that the issues presented on certiorari are not moot, we now turn to the first issue: whether the court of appeals erred in vacating Judge Skanchy's grant of the State's motion to reconsider. Resolution of this issue requires us to decide whether Judge Skanchy's failure to articulate the reason for his decision to allow the State to present the first attorney's testimony constituted an abuse of discretion and warranted reversal. We conclude that it did not.

¶ 23 We have previously explained that it is within the sound discretion of a trial court judge to grant a motion to reconsider.[16] We will not disturb a district court's decision to grant or deny such a motion absent an abuse of discretion.[17] "Under this standard, [a] trial court's ruling may be overturned *only* if there is no reasonable basis for the decision." [18]

¶ 24 Although we have consistently encouraged trial judges to give reasons on the record for discretionary rulings, we have held that failure to do so does not, alone, constitute an abuse of discretion and does not warrant reversal.[19] This is particularly true where the basis for a judge's discretionary ruling is apparent on the record.[20] For instance, as we stated in *State v. Pecht*, "we strongly recommend that trial courts enter written findings." [21] Notwithstanding this suggestion, however, we explained that, "where the record as a whole sufficiently [supports a trial court's ruling], an absence of written findings will not invalidate the trial court's conclusions." [22] Similarly, in *Neerings v. Utah State Bar*, we stated that, "[w]hile it may be instructive for [a] trial court to inform the litigants of the legal basis for its decision, we are not persuaded that failure to do so constitutes reversible error." [23] Instead, we concluded that "failure to state the grounds for [a] decision .... may only justify *remand* to the trial court." [24]

¶ 25 Despite this precedent, the court of appeals determined that Judge Skanchy's failure to articulate the basis for his decision warranted reversal. We disagree. Although Judge Skanchy's order did not explain the basis for his decision to permit the State to present the first attorney's testimony, the reason for this decision is apparent on the record. During the hearing on the State's motion to reconsider, a prosecutor explained to Judge Skanchy that, shortly after the hearing conducted by Judge Fuchs, the prosecutor had encountered the first attorney "and found out that everything that was in [Mr. Ruiz's] affidavit was blatantly incorrect." The prosecutor also informed Judge

---

16. *See, e.g., Tschaggeny v. Milbank Ins. Co.*, 2007 UT 37, ¶ 15, 163 P.3d 615 ("Because trial courts are under no obligation to consider motions for reconsideration, any decision to address or not to address the merits of such a motion is highly discretionary.").

17. *Id.* ¶ 16 ("[W]e review the trial court's denial of the motion to reconsider under an abuse of discretion standard.").

18. *Id.* (emphasis added) (internal quotation marks omitted).

19. *See, e.g., State v. Pecht*, 2002 UT 41, ¶ 34, 48 P.3d 931; *Neerings v. Utah State Bar*, 817 P.2d 320, 323 (Utah 1991).

20. *See, e.g., Pecht*, 2002 UT 41, ¶ 34, 48 P.3d 931.

21. *Id.*

22. *Id.*

23. 817 P.2d at 323.

24. *Id.* (emphasis added).

Skanchy that the State's motion to reconsider was based on the allegation that Mr. Ruiz had misrepresented information to the court. After hearing the prosecutor's argument, Judge Skanchy explained that, "under the[se] circumstances," he felt it was proper for the court to hear the first attorney's testimony "for [the] purpose[ ] of determining whether ... the original motion [for] granting a withdrawal [was] appropriate." While this language could have been more clear, given the context in which Judge Skanchy made these statements, it is apparent that Judge Skanchy allowed the State to present the testimony to determine whether Mr. Ruiz had misrepresented facts to the court and to decide whether Judge Fuchs's original order permitting Mr. Ruiz to withdraw his guilty plea was appropriate.

¶ 26 In support of our conclusion that the basis for Judge Skanchy's decision is apparent on the record, we also find it relevant that Judge Fuchs—the original judge in Mr. Ruiz's case—had scheduled a hearing on the State's motion to reconsider before his retirement. Thus, despite the fact that Judge Fuchs had initially ruled that the State could not present the first attorney's testimony, his willingness to schedule a hearing on the State's motion implies that he may have been willing to revisit that ruling himself. And given Judge Fuchs's apparent willingness to reconsider his prior ruling, Judge Skanchy may have felt it was unnecessary for him to specifically articulate his own basis for allowing the State to present the testimony. Based on our conclusion that the basis for Judge Skanchy's decision is apparent on the record, we hold that the court of appeals erred in reversing Judge Skanchy's ruling.

■ ¶ 27 In reaching this conclusion, we reiterate that the failure to state a basis for a discretionary decision does not, alone, constitute an abuse of discretion and does not, generally, warrant reversal.[25] Thus, even if

we were to determine that the basis for Judge Skanchy's decision was not apparent on the record, we would still conclude that the court of appeals erred in reversing Judge Skanchy's ruling instead of remanding the case back to him.

## III. BASED ON RECENT STATUTORY CHANGES, JUDGES NO LONGER HAVE DISCRETION TO "LIBERALLY GRANT" MOTIONS TO WITHDRAW GUILTY PLEAS

■ ¶ 28 The next issue presented on certiorari is whether presentence motions to withdraw guilty pleas should still be "liberally granted" after recent amendments to the Plea Withdrawal Statute. We first gave the instruction that presentence motions to withdraw guilty pleas should be liberally granted in State v. Gallegos.[26] In Gallegos, after a plea colloquy that fully complied with the requirements contained in rule 11(e) of the Utah Rules of Criminal Procedure, the defendant pled guilty to a charge of aggravated sexual assault.[27] Prior to his sentencing, the defendant moved to withdraw his plea based upon newly discovered evidence indicating that his alleged victim had recanted her testimony.[28] The district court denied this motion.[29]

¶ 29 On appeal to this court, the defendant argued that the district court should have permitted him to withdraw his plea.[30] In addressing the defendant's argument, we began by noting that the then-applicable version of the Plea Withdrawal Statute allowed a defendant to withdraw a guilty plea upon a showing of "good cause."[31] We further noted that, to determine whether this "good cause" standard was satisfied, a judge needed to exercise his or her discretion to decide "whether : ... [there was] a fair and just reason for granting leave to withdraw the plea."[32] In an effort to assist judges in the exercise of this discretion, we instructed that,

25. See id.

26. 738 P.2d 1040, 1042 (Utah 1987).

27. Id. at 1041.

28. Id.

29. Id.

30. Id.

31. Id.

32. Id. at 1042.

because "[t]he entry of a guilty plea involves the waiver of several important constitutional rights, ... a presentence motion to withdraw a guilty plea should, in general, be liberally granted." [33] We then concluded that the "critical new evidence" presented by the defendant constituted good cause to withdraw his guilty plea. [34] Accordingly, we held that the district court had erred in denying the defendant's motion to withdraw. [35]

¶ 30 Since *Gallegos,* the language of the Plea Withdrawal Statute has been amended. Specifically, where the Statute previously required a finding of "good cause" to grant a motion to withdraw, the Statute now requires a finding that the defendant's plea was not knowingly and voluntarily entered before a motion to withdraw can be granted. [36]

¶ 31 This change is significant. Under the prior version of the Statute, judges had broad discretion to determine the scope of circumstances that constituted "good cause" and warranted withdrawal of a plea. [37] Certainly, a judge's finding that a defendant's plea was *not* knowing and voluntary satisfied this standard, but such a showing was not statutorily required. [38] In other words, under the prior version of the Plea Withdrawal Statute, even when a judge found that a plea *was* knowingly and voluntarily entered, he or she still retained broad discretion to determine whether other circumstances in the case constituted good cause for allowing the defendant to withdraw his plea. For instance, in *Gallegos,* the defendant did not claim that his plea was entered unknowingly or involuntarily. [39] Indeed, in reciting the

facts of that case, we recognized that the defendant had entered his plea in compliance with rule 11(e) of the Utah Rules of Criminal Procedure, which requires that the defendant be fully informed of his constitutional rights. [40] But even though the defendant did not argue that his plea was unknowing or involuntary, we concluded that he had demonstrated "good cause" to withdraw his plea by introducing critical new evidence that cast doubt upon his guilt. [41]

¶ 32 In contrast, under the revised Plea Withdrawal Statute, judges no longer have such broad discretion to determine the circumstances that warrant withdrawal of a guilty plea. [42] Instead, judges may now grant a motion to withdraw *only* when they determine that a defendant's plea was not knowingly and voluntarily entered. [43] Given that this statutory requirement eliminates a judge's discretion to determine the circumstances that warrant withdrawal of a guilty plea, it would be inconsistent with the plain language of the current Statute to continue instructing judges to "liberally grant" motions to withdraw.

¶ 33 Justice Durham contends that "[t]he 'liberally grant' language in our case law ... was never directed to the [good cause] standard." [44] Instead, relying on language from *Gallegos,* she surmises that "the 'liberally grant' direction ... was connected to the ... knowing and voluntary [standard]." [45] She therefore concludes that "our direction to trial judges" to liberally grant motions to withdraw "has not been implicated ... by

33. *Id.* at 1041–42.

34. *See id.* at 1042.

35. *See id.* (reversing the defendant's sentence and remanding the case for a new trial).

36. *Compare* Utah Code § 77–13–6(2)(a), *with id.* § 77–13–6(2)(a) (1999).

37. *Gallegos,* 738 P.2d at 1041–42 (interpreting the former version of Utah Code section 77–13–6, which allowed a guilty plea to be set aside upon a showing of good cause).

38. *See, e.g., State v. Munson,* 972 P.2d 418, 422 (Utah 1998).

39. *See* 738 P.2d at 1041.

40. *See id.*

41. *See id.* at 1042 (concluding that the district court abused its discretion in denying the defendant's motion).

42. *See* Utah Code § 77–13–6(2)(a).

43. *Id.*

44. *Infra* ¶ 39.

45. *Infra* ¶ 40.

the change in the [S]tatute."[46] But as explained above, the defendant in *Gallegos* did not argue that his plea was not knowing and voluntary.[47] Thus, rather than focusing on the constitutionally-based knowing and voluntary standard, our analysis focused *exclusively* on whether the "critical new evidence" presented by the defendant constituted good cause to allow him to withdraw his plea.[48] Because of this focus, the "liberally granted" instruction given in *Gallegos* was directly related to the then-applicable "good cause" standard. We therefore disagree with Justice Durham's contention that "the 'liberally grant'" instruction was intended to relate to the "fundamental constitutional standard . . . of knowing and voluntary pleas."[49]

¶ 34 Justice Durham also contends that our articulation of the "liberally granted" standard in *Gallegos* was directed toward resolving "the degree of conviction on the part of the trial judge that the [plea withdrawal] standard had been met."[50] Specifically, she suggests that "[w]hat . . . we sought to incorporate in *Gallegos* is a relatively low standard of proof" that must be satisfied by a defendant seeking to withdraw a guilty plea.[51] She therefore proposes the following burden-shifting regime: "When a defendant makes a prima facie showing that his plea was not entered knowingly and voluntarily, a presumption in favor of withdrawal should arise . . . . [, which] can then be rebutted by the prosecution . . . demonstrat[ing] that the plea was in fact knowing and voluntary by a preponderance of the evidence."[52]

¶ 35 We disagree with this proposed burden shifting scheme for two reasons. First, nothing in the language of our opinion in *Gallegos* suggests that we intended to "incorporate a relatively low standard of proof" for a defendant seeking to withdraw a guilty

plea. Indeed, we expressly noted in *Gallegos* that the defendant denied any improper conduct and submitted an affidavit from the alleged victim in which she stated that, due to pressure from her parents, she had lied in her preliminary hearing testimony.[53] We also noted that the prosecution had failed to present *any* direct evidence to the contrary.[54] Accordingly, because of the strength of the evidence presented by the defendant, and the complete lack of evidence presented by the prosecution, our opinion in *Gallegos* should not be read as creating a low burden of proof for a defendant seeking to withdraw a guilty plea.

¶ 36 Second, and perhaps most important, the burden-shifting scheme proposed by Justice Durham contradicts the plain language of the Plea Withdrawal Statute by shifting the burden of proof from the defendant to the prosecution. The Plea Withdrawal Statute states that "[a] plea of guilty or no contest may be withdrawn only upon leave of the court and a *showing* that it was *not* knowingly and voluntarily made."[55] The way in which the requisite showing is described permits only the conclusion that it is the *defendant* who must make such showing. In other words, it is only the defendant who would seek to demonstrate that a plea was *not* knowing or *not* voluntary. Rather than placing the burden of proof on the defendant, however, Justice Durham proposes a burden-shifting scheme under which a defendant need only make some minimal showing in support of a motion to withdraw.[56] Once the defendant has made such a showing, the burden would shift to the prosecution to show by "a preponderance of the evidence" that the defendant's plea was knowingly and voluntarily entered.[57] Given the de minimis showing required of the defendant, Justice

**46.** *Infra* ¶ 40.

**47.** *Supra* ¶ 31.

**48.** *Gallegos,* 738 P.2d at 1042.

**49.** *Infra* ¶ 40.

**50.** *Infra* ¶ 39.

**51.** *Infra* ¶ 44.

**52.** *Infra* ¶ 45 (footnote omitted).

**53.** 738 P.2d at 1041–42.

**54.** *Id.* at 1042.

**55.** Utah Code § 77–13–6(2)(a) (emphases added).

**56.** *Infra* ¶ 45.

**57.** *Infra* ¶ 45.

Durham's proposed scheme effectively shifts the burden of proof to the prosecution. But this burden shift contradicts the plain language of the Plea Withdrawal Statute.

¶ 37 In sum, because our creation of the "liberally granted" instruction was directly related to a judge's broad discretion under the good cause standard, and because judges no longer have such discretion under the revised version of the Plea Withdrawal Statute, we hold that the "liberally granted" instruction given in *Gallegos* is no longer applicable. Additionally, based on the plain language of the Plea Withdrawal Statute, we hold that, on a presentence motion to withdraw, the burden of proof is on the defendant, who must show that his or her plea was not knowingly and voluntarily made.

## CONCLUSION

¶ 38 We hold that the court of appeals erred in vacating Judge Skanchy's order because the basis for his decision is apparent on the record. Additionally, based on the recent changes to the Plea Withdrawal Statute, we hold that the court of appeals erred in concluding that presentence motions to withdraw guilty pleas should still be liberally granted. For these reasons, we reverse the court of appeals' decision to vacate Judge Skanchy's grant of the State's motion to reconsider and remand this case to the court of appeals to consider any other issues Mr. Ruiz has properly raised before it.

Chief Justice DURRANT authored the opinion of the Court, in which Associate Chief Justice NEHRING, Justice PARRISH, and Justice LEE joined.

Justice DURHAM filed an opinion concurring in part and dissenting in part.

Justice DURHAM, concurring in part and dissenting in part:

¶ 39 I concur in Parts I and II of the majority opinion's analysis, but cannot join Part III's holding that trial judges no longer have discretion to "liberally grant" presentence motions to withdraw guilty pleas. *See supra* ¶ 32. It is the case that a 2003 amendment to the statute has changed the standard

for withdrawal of guilty pleas from good cause to a showing that the plea was not knowingly and voluntarily entered (which of course would have always constituted good cause under the former standard). *Compare* UTAH CODE § 77–13–6(2)(a) ("A plea of guilty or no contest may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made."), *with id.* § 77–13–6(2)(a) (1999) ("A plea of guilty or no contest may be withdrawn only upon good cause shown and with leave of the court."). It is also the case that the new standard appears to be more narrowly drawn, because there may have been other ways to show good cause beyond the knowing and voluntary standard. The "liberally grant" language in our case law, however, was never directed to the standard itself, but rather to the degree of conviction on the part of the trial judge that the standard had been met.

¶ 40 In *State v. Gallegos,* we set forth the rationale for the practice of giving defendants the benefit of the doubt in presentence plea withdrawal proceedings:

> The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea which was unknowingly, unintelligently, or involuntarily made. . . .
>
> The entry of a guilty plea involves the waiver of several important constitutional rights, including the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront witnesses. Because the entry of such a plea constitutes such a waiver, and because the prosecution will generally be unable to show that it will suffer any significant prejudice if the plea is withdrawn, a presentence motion to withdraw a guilty plea should, in general, be liberally granted.

738 P.2d 1040, 1041–42 (Utah 1987) (footnote omitted). As this language demonstrates, the "liberally grant" direction was not tied to the former "good cause" statutory standard, but rather was connected to the fundamental constitutional standard—now embodied in the statute—of knowing and voluntary

pleas.[1] Although the factual issue before the court in *Gallegos* was "quite narrow," *id.* at 1041, the court purposefully chose to broadly explain the principles applicable to plea withdrawals generally, *see id.* at 1041–42, and *then* applied the principles to the facts of the particular case, *id.* at 1042 ("Application of the foregoing principles to the totality of circumstances in this case prompts the conclusion. . . ."). Thus, the rationale for our direction to trial judges has not been implicated in any way by the change in the statute.[2]

¶ 41 The real problem is that we did not focus in *Gallegos* on what it means to say that motions to withdraw guilty pleas should be liberally granted. Clearly, a basic evidentiary showing must be made that a plea is not knowing and voluntary—but what is the standard of proof, and which party bears the burden of persuasion?

¶ 42 "The degree of proof required in a particular type of proceeding has 'traditionally been left to the judiciary to resolve.'" *Uzelac v. Thurgood (In re Estate of S.T.T.)*, 2006 UT 46, ¶ 28, 144 P.3d 1083 (quoting *Santosky v. Kramer*, 455 U.S. 745, 755, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). "The standard [of proof] serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). "In cases involving individual rights, whether criminal or civil, [t]he standard of proof [at a minimum] reflects the value society places on individual liberty." *Id.* at 425, 99 S.Ct. 1804 (alterations in original) (inter-

nal quotation marks omitted). "The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Id.* at 427, 99 S.Ct. 1804; *see also Santosky*, 455 U.S. at 768, 102 S.Ct. 1388 (suggesting that lesser protection in some circumstances would be "constitutionally intolerable" under the due process clause).

¶ 43 The judiciary similarly may determine the appropriate burden of persuasion. *See, e.g., Searle v. Milburn Irrigation Co.*, 2006 UT 16, ¶ 50, 133 P.3d 382 (setting a burden of persuasion based on "policy reasons" and other considerations); *State v. Wood*, 648 P.2d 71, 83–84 (Utah 1982). Furthermore, we have on occasion interpreted statutory language to encompass a shifting burden of persuasion, even when the statutory language itself did not explicitly mandate a burden-shifting regime. *See, e.g., Brimm v. Cache Valley Banking Co.*, 2 Utah 2d 93, 269 P.2d 859, 864 (1954) (holding that, under a statute regarding appurtenance of water rights, an initial showing could be overcome only by clear and convincing evidence offered by the other party); *see also Searle*, 2006 UT 16, ¶¶ 49–53, 133 P.3d 382 (considering whether, but ultimately declining, to shift the burden of persuasion); *cf. Hendee v. Walker Bank & Trust Co. (In re Estate of Swan )*, 4 Utah 2d 277, 293 P.2d 682, 689–90 (Utah 1956) (discussing the basis for burdens of persuasion and setting a shifting burden of persuasion).

¶ 44 What I believe we sought to incorporate in *Gallegos* is a relatively low standard

---

1. As the United States Supreme Court has stated, A defendant who enters [a guilty] plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.

*McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (footnote omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

2. I note that the change in the statute does, however, necessitate a change in our standard of review. Previously, we have stated that "[a] district court's ruling on a motion to withdraw a guilty plea ... invites multiple standards of review." *State v. Lovell*, 2011 UT 36, ¶ 5, 262 P.3d 803. The 2003 amendment, however, focuses our inquiry solely on the question whether a plea was entered knowingly and voluntarily, which mirrors the fundamental constitutional standard. This "ultimate question of whether the trial court strictly complied with constitutional ... requirements for entry of a guilty plea is a question of law that is reviewed for correctness." *State v. Holland*, 921 P.2d 430, 433 (Utah 1996); *accord Lovell*, 2011 UT 36, ¶ 5, 262 P.3d 803.

of proof; we did not speak at all to the burden of persuasion. I remain convinced that the standard of proof should not be high, and also now conclude that we should carefully allocate the burden of persuasion to accommodate the relative positions of the defendant and the prosecution *prior to sentencing.* At that stage, as we noted in *Gallegos,* the defendant stands to forgo by waiver a wide range of fundamental constitutional rights, whereas the prosecution loses almost nothing by being required to go forward with the trial to which the defendant was entitled but for the challenged plea. *See* 738 P.2d at 1041–42; *see also McCarthy,* 394 U.S. at 466, 89 S.Ct. 1166. Little or no time has been lost, and the work necessary to prepare for trial has not been compromised. In an effort to vindicate defendants' constitutional rights to trial, our procedure for enforcing waivers of those rights should afford the benefit of any doubt to withdrawal of unknowing or involuntary pleas.

¶ 45 I would propose, then, the following procedural regime: When a defendant makes a prima facie showing [3] that his plea was not entered knowingly and voluntarily, a presumption in favor of withdrawal should arise. The presumption can then be rebutted by the prosecution, which should be required to demonstrate that the plea was in fact knowing and voluntary by a preponderance of the evidence. This process would honor both the statutory standard and our case law dealing with the nature and context of presentence motions to withdraw guilty pleas.

---

3. "Prima facie evidence means only that quantum of evidence that suffices for proof of a particular fact until the fact is contradicted by other evidence." *Godesky v. Provo City Corp.,* 690 P.2d 541, 547 (Utah 1984) (internal quotation marks omitted); *see also Searle,* 2006 UT 16, ¶¶ 51–52, 133 P.3d 382.